# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHITECTURAL MAILBOXES, LLC,<br><br>　　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>EPOCH DESIGN, LLC,<br><br>　　　　　　　　　　　　Defendant. | CASE NO. 10cv974 DMS (CAB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[Docket No. 17]** |

This case comes before the Court on Defendant's motion to dismiss. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons set out below, the Court grants in part and denies in part Defendant's motion.

## I.
## BACKGROUND

Plaintiff Architectural Mailboxes and Defendant Epoch Design are in the business of making and selling locking mailboxes. (Compl. ¶¶ 7-8.) Plaintiff is the exclusive licensee to United States Trademark Registration 2,695,544 for "OASIS" for use with mailboxes made of metal. (*Id.* ¶ 9.) It has used the OASIS mark in commerce since at least 2001. (*Id.* ¶ 10.)

Plaintiff alleges that Defendant is using the OASIS trademark on its website "to divert prospective customers searching online for the market-leading OASIS brand of locking metal mailboxes to their competing online Mail Boss storefront." (*Id.* ¶ 12.) Plaintiff also alleges that Defendant's website "does nothing to dispel the impression that a (nonexistent) affiliation, connection

or sponsorship exists between Architectural Mailboxes and Epoch." (*Id.* ¶ 13.) Plaintiff further alleges that Defendant's website "misrepresent[s] the character and quality of the OASIS goods." (*Id.* ¶ 14.) Plaintiff also alleges Defendant "has used an actual OASIS mailbox at [sic] least one trade show, making false and misleading statements about the OASIS to customers and potential customers of the OASIS[,]" (*id.* ¶ 20), and "has used an actual OASIS mailbox in stores as part of [its] point of purchase videos and systems relating to its own products, making false and misleading statements about the OASIS to customers and potential customers of the OASIS." (*Id.* ¶ 21.)

As a result of Defendant's alleged conduct, on May 5, 2010, Plaintiff filed the present case against Defendant. Plaintiff alleges five claims: (1) Trademark infringement under the Lanham Act, (2) trademark dilution under the Lanham Act, (3) unfair competition under the Lanham Act, (4) intentional interference with prospective economic advantage and (5) common law unfair competition. Until recently, the parties were engaged in settlement discussions with Magistrate Judge Bencivengo, and for that reason, they requested extensions of time for Defendant to respond to the Complaint, and continuances of the hearing date on the present motion, which the Court granted. After the settlement discussions broke down, the parties completed the briefing on the present motion, which is now ready for disposition.

## II.

## DISCUSSION

Defendant moves to dismiss the Complaint in its entirety. It argues Plaintiff's first claim and its third claim, to the extent it relies on a false designation of origin theory, should be dismissed pursuant to the nominative use defense, Plaintiff's second claim is barred by 15 U.S.C. § 1125(c)(3), Plaintiff's third claim, to the extent it relies on a false advertising theory, fails to allege a misrepresentation and fails to comply with Federal Rule of Civil Procedure 9(b), and Plaintiff has failed to allege the elements of a claim for intentional interference with prospective economic advantage or common law unfair competition. Plaintiff disputes each argument.

**A.   Standard of Review**

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v.*

1  *Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint
2  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on
3  its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility
4  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that
5  the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

6  "Determining whether a complaint states a plausible claim for relief will ... be a context-
7  specific task that requires the reviewing court to draw on its judicial experience and common sense."
8  *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this
9  task "by identifying the allegations in the complaint that are not entitled to the assumption of truth."
10 *Id.* at 1951. It then considered "the factual allegations in respondent's complaint to determine if they
11 plausibly suggest an entitlement to relief." *Id.* at 1951.

12 **B.    Trademark Infringement**

13 In response to Plaintiff's first claim for trademark infringement, Defendant raises the issue of
14 nominative fair use. "In cases where a nominative fair use defense is raised, we ask whether (1) the
15 product was 'readily identifiable' without use of the mark; (2) defendant used more of the mark than
16 necessary; or (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder."
17 *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (citing *Playboy*
18 *Enterprises, Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002)). The ultimate objective of this test is
19 to "'evaluate[ ] the likelihood of confusion in nominative use cases.'" *Id.* at 1176 (quoting *Welles*,
20 279 F.3d at 801). Defendant argues each of these elements is satisfied in this case, and therefore the
21 claim must be dismissed. Plaintiff disputes that the elements are met, and also asserts this issue is
22 inappropriate for resolution on a motion to dismiss.

23 To rebut the latter argument, Defendant cites *Hensley Manufacturing, Inc. v. ProPride, Inc.*,
24 579 F.3d 603 (6th Cir. 2009). In that case, the plaintiff and defendants were in the business of
25 manufacturing and selling trailer hitches for recreational vehicles ("RVs"). The dispute revolved
26 around Jim Hensley, an inventor and designer of trailer hitches. Before the lawsuit was filed, Mr.
27 Hensley sold his trailer hitch business to the plaintiff, which registered a trademark for the name
28 "Hensley" and the "Hensley Arrow" design. *Id.* at 607. Many years later, Mr. Hensley parted ways

with the plaintiff, and designed a new trailer hitch, which he licensed to the defendant ProPride. *Id.* ProPride used Mr. Hensley's name in its advertising and marketing materials for its trailer hitch, called the "ProPride Pivot Point Projection Hitch," or "3P Hitch," and the plaintiff alleged that the use of the Hensley name infringed on its trademarks.

In response to the complaint, the defendants filed a motion to dismiss based on the fair use defense, which the district court granted and the appellate court affirmed. Specifically, the appellate court found "the complaint does not allege facts sufficient to show that ProPride's use of the 'Hensley' name creates a likelihood of confusion as to the source of its products." *Id.* at 610. In reaching this conclusion, the court examined the defendants' print and on-line advertisements, which were attached to the complaint as exhibits. The print advertisements mentioned Mr. Hensley, and included a disclaimer that he was no longer affiliated with the plaintiff. *Id.* at 607-08. They also listed ProPride's telephone number and directed the reader to ProPride's website. *Id.* The excerpt from ProPride's website included "a link to 'The Jim Hensley Hitch Story,' which describes Jim Hensley's background, his design contributions to the RV industry, and his relationship to both Hensley Manufacturing and ProPride." *Id.* at 608. The last exhibit was an eBay listing by ProPride informing readers about Mr. Hensley's new design, his separation from Hensley Manufacturing and his partnership with ProPride. *Id.* Ultimately, the court found these exhibits:

> describe Jim Hensley's association with ProPride, his design of the ProPride 3P Hitch, and his former association with Hensley Manufacturing. They do not identify Hensley Manufacturing, or even "Hensley," as the source of ProPride's products or suggest any current association between Hensley Manufacturing and Jim Hensley or ProPride. In fact, the advertisements make clear that Jim Hensley is no longer associated with Hensley Manufacturing. Moreover, they always refer to "Jim Hensley" and never simply use the word "Hensley" in connection with the 3P Hitch.

*Id.* at 611. For these reasons, the court concluded that the exhibits "do not create a likelihood of consumer confusion regarding the source of ProPride's products." *Id.*

In this case, the exhibits attached to the Complaint lead to the same conclusion, namely that Plaintiff has failed to allege sufficient facts to demonstrate a likelihood of confusion. The excerpts from Defendant's website clearly identify Plaintiff as the manufacturer of the Oasis Jr. mailbox. (*See* Compl., Exs. 3, 4, 6.) The website even goes so far as to state, "Oasis® is a registered trademark of Architectural Mailboxes." (Compl., Ex. 4.) Furthermore, as Defendant points out, "every statement

about the Oasis Jr. made on the mailboss.net site is negative and a criticism of the product's lack of security." (Mem. of P. & A. in Supp. of Mot. at 9.) Under these circumstances, it is unclear why Defendant would attempt to create an "affiliation, connection or sponsorship" between itself and Plaintiff's products. (Compl. ¶ 13.) On the contrary, Defendant is drawing a clear distinction between its products and those of Plaintiff. In light of this evidence, Plaintiff has not alleged facts sufficient to support its trademark infringement claim.[1]

In reaching this conclusion, the Court is aware that other courts in the Ninth Circuit have declined to dismiss trademark infringement claims based on nominative fair use at the pleading stage. *See*, *e.g.*, *Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*, No. C 08-04397 WHA, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008) (stating "analysis of nominative fair use is premature on a motion to dismiss"); *Powerlineman.com, LLC v. Jackson*, No. CIV. S-070879 LKK/EFB, 2007 WL 3479562, at *4 (E.D. Cal. Nov. 15, 2007) (same). However, at least one district court in the Ninth Circuit has dismissed a trademark infringement claim based on the classic fair use defense, and that decision was upheld by the Ninth Circuit. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1466-67 (9th Cir. 1993). Although classic fair use is different from nominative fair use,[2] the *Dual-Deck* case indicates that courts may resolve these issues at the pleading stage. Absent binding authority to the contrary, this Court follows the approach of the Ninth Circuit in *Dual-Deck* and the Sixth Circuit in *Hensley* in concluding that Plaintiff has failed to state a claim for trademark infringement. Accordingly, the Court grants the motion to dismiss this claim.[3]

///

---

[1] In its opposition to the motion to dismiss, Plaintiff argues its trademark infringement claim also relies on Defendant's use of Plaintiff's trademark in Defendant's metadata. As Defendant points out, however, the Complaint does not include any such allegations. Accordingly, the Court declines to address whether those "allegations" or Plaintiff's corresponding theory of initial interest confusion are sufficient to state a trademark infringement claim.

[2] Classic fair use applies "where 'a defendant has used the plaintiff's mark *only* to describe his own product, *and not at all to describe the plaintiff's product*.'" *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 809 (9th Cir. 2003) (quoting *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002)).

[3] Because Plaintiff's false designation of origin and common law unfair competition claims rely on the same test as the trademark infringement claim, the Court grants the motion to dismiss those claims, as well.

**C.    Trademark Dilution**

In its second claim, Plaintiff alleges trademark dilution. Defendant argues this claim must be dismissed pursuant to 15 U.S.C. § 1125(c)(3)(A). That statute provides:

> The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:
>
> (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with–
>
> (i) advertising or promotion that permits consumers to compare goods or services; or
>
> (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

15 U.S.C. § 1125(c)(3)(A). Consistent with the Court's findings on Plaintiff's trademark infringement claim, Defendant has met the requirements of § 1125(c)(3)(A). Specifically, Defendant has shown the nominative fair use defense applies, and the facts set out in the Complaint and the exhibits attached thereto reflect that Defendant used Plaintiff's trademark in connection with comparative advertising or to criticize Plaintiff's goods. Accordingly, the Court grants the motion to dismiss this claim.

**D.    False Advertising Under the Lanham Act**

Having dismissed Plaintiff's false designation of origin claim, the only remaining theory supporting Plaintiff's unfair competition claim under the Lanham Act is false advertising. Defendant argues this aspect of Plaintiff's claim must be dismissed for three reasons. First, it asserts Plaintiff has failed to plead a false statement. Second, Defendant contends Plaintiff has failed to explain how the alleged statements are false. Third, Defendant maintains Plaintiff has failed to satisfy the requirements of Federal Rule of Civil Procedure 9(b).

To state a claim for false advertising under the Lanham Act, the plaintiff must show:

> "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."

*Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)). The Ninth Circuit has yet to

1  decide whether Federal Rule of Civil Procedure 9(b) applies to false advertising claims under the
2  Lanham Act.  However, it has applied Rule 9(b) to other types of false advertising claims.  *See Kearns*
3  *v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to claim for false
4  advertising under California Business and Professions Code § 17200); *Vess v. Ciba-Geigy Corp. USA*,
5  317 F.3d 1097, 1102-04 (9th Cir. 2003) (applying Rule 9(b) to claim for false advertising under
6  California Business and Professions Code § 17500).  District courts have, in turn, extended that rule
7  to false advertising claims under the Lanham Act.  *See*, *e.g.*, *VIP Products, LLC v. Kong Co. LLC*, No.
8  CV10-0998-PHX-DGC, 2011 WL 98992 (D. Ariz. Jan. 12, 2011); *Ecodisc Tech. AG v. DVD*
9  *Format/Logo Licensing Corp.*, 711 F.Supp.2d 1074, 1085 (C.D. Cal. 2010); *Pom Wonderful LLC v.*
10 *Ocean Spray Cranberries, Inc.*, 642 F.Supp.2d 1112, 1123-24 (C.D. Cal. 2009).  Following that line
11 of cases, this Court finds Plaintiff's false advertising claim is subject to the pleading requirements of
12 Rule 9(b).  Accordingly, Plaintiff must include "'the who, what, when, where, and how'" of the
13 alleged false advertising.  *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th
14 Cir. 1997)).

15       Here, Defendant argues Plaintiff has failed to satisfy the "what" and "how" aspects of Rule
16 9(b).  Specifically, Defendant faults Plaintiff for failing to identify which of Defendant's statements
17 are false or misleading, and how those statements are false and misleading.  However, Plaintiff does
18 satisfy these requirements with respect to certain statements alleged in the Complaint.  For instance,
19 Plaintiff alleges the following statements on Defendant's website are false or misleading: (1) The
20 OASIS Jr. mailbox suffers from "security inadequacies" (Compl., Ex. 3); (2) the OASIS Jr. may
21 provide homeowners a "false sense of security" (*id.*); (3) mail left in the OASIS Jr. mailbox is "just
22 as vulnerable to thieves" as mail left in an unlocked mailbox (*id.*); and (4) the OASIS Jr. mailbox is
23 not a "security" mailbox (Compl., Ex. 4).  Each of these statements is specifically identified, and all
24 of the statements are alleged to be false or misleading in that they specifically contradict the purpose
25 of Plaintiff's products, which is to provide "secure metal locking mailboxes[.]"  (Compl., ¶ 11.)
26 Because Plaintiff has satisfied Rule 9(b) with respect to these statements, Defendant's motion to
27 dismiss this claim is denied.
28 / / /

**E.     Intentional Interference with Prospective Economic Advantage**

The next claim at issue is Plaintiff's claim for intentional interference with prospective economic advantage.

> In order to prove a claim for intentional interference with prospective economic advantage, a plaintiff has the burden of proving five elements: (1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party.

*Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 944 (2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003)). Defendant argues Plaintiff has failed to satisfy the pleading requirements for elements (1) and (4).[4]

With respect to element (1), Defendant contends Plaintiff has failed to allege an existing economic relationship. Although the phraseology of the Complaint is not as clear as it could be, the Court finds Plaintiff has properly pleaded an existing economic relationship. (*See* Compl., ¶ 60.) Specifically, Plaintiff alleges it has existing business relationships with third-parties, including Ace Hardware. (*Id.*) Accordingly, this element has been properly pleaded.

Element (4) requires a showing of actual disruption to the business relationship. Defendant argues Plaintiff has failed to allege any facts supporting its conclusory statement that Defendant interfered with the relationship. Plaintiff does not address this argument directly, but does dispute that it has alleged sufficient facts to support this element. Specifically, Plaintiff argues it has satisfied this element by pleading that "(1) interested customers are diverted to defendant's website instead of Plaintiff's website, and (2) false statements about the security of the mailboxes have made ongoing sales to customers and distributors of Plaintiff more difficult." (Opp'n to Mot. at 17.) However, Plaintiff has not alleged that it has existing business relationships with these "interested customers." Indeed, Plaintiff describes these individuals as "prospective customers" in the Complaint. (Compl., ¶¶ 12-14.) Thus, while Plaintiff may have a "speculative expectation that a potentially beneficial

---

[4] Defendant also asserts this claim is subject to dismissal for failure to plead Defendant's conduct was independently wrongful and for failure to satisfy the heightened pleading requirements of Rule 9(b). For the reasons set out in Section II.D., the Court rejects these arguments.

relationship with eventually arise," *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996), that expectation is insufficient to state a claim for intentional interference with prospective economic advantage. *See id.* at 524-28. Furthermore, although Plaintiff states in its opposition brief that Defendant's conduct has made ongoing sales more difficult, it does not so allege in the Complaint. Because Plaintiff has failed to allege sufficient facts to support the fourth element of intentional interference with prospective economic advantage, the Court grants the motion to dismiss this claim.

### III.
### CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part Defendant's motion to dismiss. Specifically, the Court grants the motion to dismiss Plaintiff's first, second, fourth and fifth claims. The Court also grants the motion to dismiss Plaintiff's third claim to the extent it relies on a false designation of origin theory. The Court denies the motion as to Plaintiff's third claim to the extent it relies on a false advertising theory.

In accordance with Plaintiff's request, Plaintiff is granted leave to file a First Amended Complaint that cures the pleading deficiencies set out in this Order. Plaintiff is cautioned that if its First Amended Complaint does not cure these deficiencies, its claims will be dismissed with prejudice and without leave to amend. The First Amended Complaint shall be filed on or before May 6, 2011.

**IT IS SO ORDERED**.

DATED: April 28, 2011

_____
HON. DANA M. SABRAW
United States District Judge